IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WESLEY L. ADKINS,

                    **Plaintiff,**

      v.                                                                 CASE NO. 24-3210-JWL

STATE OF KANSAS, ET AL.,

                    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

      This matter is a pro se civil rights action under 42 U.S.C. § 1983 brought by Plaintiff and state prisoner Wesley L. Adkins, who is housed at El Dorado Correctional Facility (EDCF) in El Dorado, Kansas. It comes before the Court on Plaintiff's amended complaint (Doc. 7) and memorandum in support (Doc. 8), which the Court has reviewed as required by 28 U.S.C. § 1915A(a). For the reasons stated below, the following Defendants will be dismissed from this action: the State of Kansas, Jeff Zmuda, Darcie Holthaus, Tommy L. Williams, Tracy Gunderson, and Sarah D. Madgwick. Plaintiff will be given time in which to show good cause, in writing, why his claims against Defendants Jennifer Laha and Kelly A. Knipp should not be dismissed for failure to state a plausible claim on which relief may be granted. The Court will decide whether Defendant Centurion Managed Care must be dismissed after Plaintiff files his response to this order or the time to respond to this order expires.

    **I.**    **Nature of the Matter before the Court**

      In the amended complaint, Plaintiff names as Defendants in this matter the State of Kansas; Centurion Managed Care (Centurion); Kansas Department of Corrections (KDOC) Secretary Jeff Zmuda; KDOC "Corrections Manager, Facility Management" Darcie Holthaus; El Dorado

1

Correctional Facility (EDCF) Warden Tommy L. Williams; Tracy Gunderson and Sarah D. Madgwick, Health Service Administrators at Lansing Correctional Facility (LCF) and EDCF, respectively; Registered Nurse Jennifer Laha, who works at LCF; and Advanced Practice Registered Nurse (APRN) Kelly A. Knipp, who works at EDCF. (Doc. 7, p. 1-6.) As the background of this case, Plaintiff alleges that after he committed battery on a correctional officer at LCF on April 6, 2024, he was denied adequate medical treatment for injuries to his hand and his grievances regarding the inadequate treatment were improperly denied or went unanswered. Plaintiff alleges that the inadequate treatment continued after he was transferred to EDCF on April 8, 2024. *Id.* at 6-12. Additional facts are included below as necessary.

As Count I, Plaintiff alleges the violation of his Eighth Amendment rights by deliberate indifference to a serious medical need, with the added notation: "2 counts." (Doc. 7, p. 7.) First, Plaintiff asserts on April 6, 2024, after the battery, he told Defendant Laha at LCF that his finger needed stitches and his hand was broken, but she failed to provide the necessary treatment. *Id.* at 7-8. Next, Plaintiff alleges that on April 15, 2024, after multiple fractures in his hand were diagnosed, Defendant Knipp came to his cell at EDCF, asked him to put his arm out of the food pass, and "inadequately placed a splint on [his] hand." *Id.* at 8. Defendant Knipp then failed to follow up with him 3 days later, as she had said she would. *Id.* Additionally, Plaintiff states that when his hand was x-rayed again on June 6, 2024, the x-rays revealed continuing fractures, but despite the results being available on June 10, 2024, Defendant Knipp did not tell Plaintiff the results until an unrelated sick call 9 days later. *Id.* at 8-9.

As Count II, Plaintiff alleges the "[v]iolation of the Eighth Amendment 'Supervisory Liability' and/or Deliberate Indifference. (5 counts). [*sic*]." *Id.* at 7. Plaintiff contends that Defendant Gunderson is responsible for managing health care services at LCF and failed to

properly train, supervise, or discipline Centurion staff, which led to the inadequate medical treatment. *Id.* at 7, 10. He repeats this assertion of "direct[] and indirect[]" liability against Defendant Madgwick for the allegedly inadequate medical care he received at EDCF. *Id.* at 10. Plaintiff also brings claims in Count II against Defendants Williams, Zmuda, and Holthaus for "inadequately" responding to his multiple grievances about the medical treatment he received. *Id.* at 11-12. He further alleges that Defendant Holthaus falsified his medical records and that the Defendants failed to properly train, supervise, or discipline their subordinates. *Id.*

As relief, Plaintiff seeks $10,000,000.00 in damages. *Id.* at 14. In an attached memorandum, Plaintiff provides additional factual allegations (Doc. 8, p. 1-17); sets out argument and legal authority in support of his claims, *id.* at 18-30; and explains in more detail the monetary damages he requests, *id.* at 31-32.

## II. Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his amended complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). During this screening, the Court liberally construes this pro se amended complaint and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the amended complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

**III. Discussion**

    **A. Eleventh Amendment Immunity**

As previously explained to Plaintiff, the State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. (Doc. 6, p. 3-4.) The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state." *See Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)); *see also Bd.*

*of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). Therefore, in the absence of special circumstances, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Plaintiff's amended complaint seeks money damages from the State of Kansas, so the Court must determine whether the Eleventh Amendment prohibits the suit.

It is well-established that there are three exceptions to state immunity under the Eleventh Amendment: (1) when the State consents to suit, meaning it waives immunity; (2) when Congress properly abrogates the immunity through legislation; and (3) when there are ongoing violations of federal relief and the plaintiff seeks only prospective injunctive relief. *See Frank v. Lee*, 84 F.4th 1119, 1130-31 (10th Cir. 2023); *Umholtz v. Kan. Dept. of Soc. and Rehabilitation Servs.*, 926 F. Supp. 2d 1222, 1227 (D. Kan. 2013). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002); *see also McGee v. Corizon,* 831 F. Appx. 381, (10th Cir. Oct. 14, 2020) (unpublished) ("As to the Kansas Department of Corrections, the Eleventh Amendment bars McGee's claim. It is well-recognized that an action cannot be brought in federal court against a state or its agencies.") (citation omitted). Moreover, Plaintiff seeks money damages in this suit. Therefore, the only exception remaining is consent by the State.

Plaintiff asserts in the amended complaint that Defendant Holthaus "waived the State's immunity by giving [Plaintiff] permission to pursue relief connected to litigation concerning the adequacy or propriety of medical health care diagnoses[] and treatment." (Doc. 7, p. 11-12.) He repeats this language in the memorandum in support of his amended complaint, citing Exhibit 5,

5

which is attached. (Doc. 8, p. 16.) The first page of Exhibit 5 is a copy of an official response in an appeal from a grievance related to the delay in informing Plaintiff that his June 2024 x-rays revealed continued fractures. (Doc. 8-5, p. 1.) At the bottom of the form on which the response is written is the following language:

> The information provided in the response above concerning the grievant's medical and/or mental health condition and treatment is confidential and private in nature and is not intended for re-disclosure or sharing with third parties. That statement, however, does not apply to the exercise of any other administrative remedies provided by the Kansas Department of Corrections, nor to pursuit of other administrative relief connected with medical and/or mental health condition and treatment, such as, for example, application for disability benefits under state or federal law, or to pursuit of litigation concerning the adequacy or propriety of medical and/or mental health care diagnosis and treatment furnished to the grievant.

*Id.*

"'It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed.'" *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1304 (10th Cir. 2001) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 490, 58 (1978)). The language quoted above does not contain an express waiver of Eleventh Amendment immunity—it does not confer permission for an individual to bring suit against the State of Kansas. It states that although the information in the grievance response "is not intended for re-disclosure or sharing with third parties," the restriction on sharing the information "does not apply . . . to pursuit of litigation . . . ." (Doc. 8-5, p. 1.) Rather than consenting to suit, this language merely states that the confidentiality provisions do not apply when litigation is pursued. It is not a waiver of immunity.

In the memorandum in support of his amended complaint, Plaintiff also points out that in a previous case in this Court, Case No. 24-3120-JWL, he asked for permission to bring suit against the State of Kansas and this Court "ruled that [he] did <u>not</u> need permission." (Doc. 8, p. 12-13.) Case No. 24-3210-JWL case began when Plaintiff submitted to the Court a document titled

"Motion for Permission to Bring Civil Rights Complaint, pursuant to 42 U.S.C. 1983, against the State of Kansas, and Its Medical Health Care Provider, Centurion Managed Care." *Adkins v. Kansas*, Case No. 24-3120-JWL, Doc. 1. The document contained a brief statement alleging that KDOC officials and Centurion staff violated Plaintiff's constitutional rights by exhibiting deliberate indifference to Plaintiff's serious medical needs, case law in support, and a "request that this Court grant[] permission for [Plaintiff] to pursue a suit, against the State of Kansas, and its medical health care provider, Centurion Managed Care, under 42 U.S.C. 1983." *Id.*

The Court liberally construed the pro se submission as a request to file a civil rights complaint under 42 U.S.C. § 1983 and, in a memorandum and order issued on July 15, 2024, the Court explained:

> Plaintiff does not at this time need the Court's permission to file a civil rights complaint under 42 U.S.C. § 1983. In the interest of efficiency, however, the Court directed the clerk to assign a case number to this matter and file the motion as the initial pleading in this case.

Case No. 24-3210-JWL, Doc. 2. The Court directed the clerk to provide Plaintiff with the required, court-approved form on which to file his complaint. *Id.* The case was later dismissed without prejudice. Case No. 24-3210-JWL, Doc. 18.

To the extent that Plaintiff understood the July 15, 2024 memorandum and order to somehow waive the State of Kansas' Eleventh Amendment immunity, he was mistaken. Simply put, this Court does not have the legal authority to waive Eleventh Amendment immunity on behalf of Kansas. The Court's statement that Plaintiff did not need the Court's permission to file a civil rights complaint under 42 U.S.C. § 1983 was no more than it seems on its face:  permission to *file* a civil rights complaint. Plaintiff filed complaints in that matter and in the case now before this Court. Once Plaintiff's complaint was filed, however, 28 U.S.C. § 1915A(a) and (b) required this Court to screen the complaint and dismiss any portion of it that "seeks monetary relief from a

7

defendant who is immune from such relief." And under the Eleventh Amendment, the State of Kansas is immune from suit in this Court for monetary relief. Accordingly, the State of Kansas must be dismissed as a defendant in this matter.

**B. Personal Participation**

In its January 14, 2025 memorandum and order (M&O), which was issued after the Court screened the initial complaint in this matter, the Court explained:

> Defendants Zmuda, Holthaus, Williams, Gunderson, and Madgwick are subject to dismissal from this matter because Plaintiff has failed to allege these Defendants' personal participation in a constitutional violation. An essential element of a civil rights claim under § 1983 against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).
>
> . . . .
>
> Liberally construing the complaint and the attachments thereto, Plaintiff generally alleges that Defendants Zmuda, Williams, Gunderson, Madgwick, and Holthaus are subject to supervisory liability for the acts of their employees. (Doc. 1, p. 2-4.) But, as noted above, supervisory liability does not apply in § 1983 suits, so this is not sufficient to state a plausible claim for relief. Next, Plaintiff generally alleges that each Defendant engaged in "negligent retention, training, and supervision." *Id.* But Plaintiff does not allege specific facts showing negligent retention, training, or supervision. He does not allege that any of these Defendants retained or trained any specific individual who violated his constitutional rights. Plaintiff's conclusory allegations of negligent retention, training, and supervision are insufficient to create personal liability under § 1983. *See Starr v. Hayden*, 2021 WL 826248, *2 (D. Kan. March 3, 2021) (unpublished) (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009), and dismissing claims based on "allegations of failure to train [that] are nothing more than conclusory and speculative statements").
>
> The only specific factual allegations Plaintiff makes in the complaint and attachments thereto regarding Defendants Zmuda, Williams, Gunderson, Madgwick, and Holthaus involve interactions in which he alleges each Defendant

8

> did not respond to his grievances and complaints "adequately," which appears to reflect that they did not respond as Plaintiff wishes they had. (Doc. 1, p. 2-3, 8-9, 11; Doc. 1-1, p. 10, 12-14, 16-24, 27-30, 32.) The Tenth Circuit has long made clear that an allegation that an official denied or failed to respond to a grievance is not enough to show personal participation as required for a plausible claim under § 1983. *See Gallagher*, 587 F.3d at 1069. . . . Accordingly, because Plaintiff has failed to allege their sufficient personal participation in a constitutional violation, Defendants Zmuda, Williams, Gunderson, Madgwick, and Holthaus are subject to dismissal from this action.

(Doc. 6, p. 5-7.)

The amended complaint suffers from the same deficiency as the initial complaint in this matter with respect to Defendants Zmuda, Williams, Gunderson, and Madgwick. Plaintiff seeks to impose liability on these individuals based solely on their supervisory roles and/or their "inadequate" responses—or lack of response—to his grievances. (Doc. 7, p. 7, 9-12.) Even taking into consideration the information in the memorandum in support, Plaintiff relies only on the supervisory nature of these Defendants' jobs and their part in the grievance process. (Doc. 8, p. 8-10, 13-15.) As previously explained, this is insufficient to establish their direct personal participation in a violation of Plaintiff's constitutional rights.

Moreover, to the extent that Plaintiff alleges in the amended complaint that these Defendants violated KDOC Internal Management Policy and Procedures (IMPPs), *see id.* at 23-25 and 28-30, he has not shown direct personal participation in a constitutional violation. The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). Even liberally construing the amended complaint and taking all facts alleged therein as true, Plaintiff has not alleged sufficient facts to show that Defendants Zmuda, Williams, Gunderson, or Madgwick failed to conform to a

9

constitutional standard. This means that Plaintiff has failed to state a plausible claim for relief against Defendants Zmuda, Williams, Gunderson, and Madgwick. Accordingly, they must be dismissed as defendants in this matter.

The amended complaint also alleges that Defendant Holthaus engaged in "falsifying [Plaintiff's] medical accounts." (Doc. 7, p. 11.) But Plaintiff does not provide factual support for this allegation or further explain it. "[A] pro se litigant's 'conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.'" (Doc. 6, p. 3 (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).) Thus, Plaintiff has failed to state a plausible claim for relief against Defendant Holthaus, who must also be dismissed from this matter.

### C. Eighth Amendment

In Count I of the amended complaint, Plaintiff claims that Defendants Laha and Knipp, nurses at LCF and EDCF, respectively, violated his Eighth Amendment rights by their deliberate indifference to his serious medical needs. (Doc. 7, p. 7.) An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As set out in the January 14, 2025 M&O:

> The test for . . . deliberate indifference to a serious medical need in this context involves two components, one objective and one subjective. *Paugh v. Uintah County*, 47 F.4th 1139, 1154 (10th Cir. 2022), *cert. denied* June 26, 2023.
>
> The objective component focuses on the "seriousness of the plaintiff's alleged harm," and the subjective component focuses on 'the mental state of the defendant with respect to the risk of that harm."
> ….
> To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self* [*v. Crum*], 439 F.3d [1227,] 1230 [(10th Cir. 2006)] (quoting *Farmer* [*v. Brennan*], 511 U.S. [825,] 834 [(1994)]). Generally, a

10

> medical need qualifies as "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock* [*v. Colo.*], 218 F.3d [1205,] 1209 [(10th Cir. 2000)] (citation omitted).
>
> *Paugh*, 47 F.4th at 1154-55. . . .
>
> "The subjective component of the test for deliberate indifference to a serious medical need is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Martinez*, 430 F.3d at 1305. "A [p]laintiff may prove awareness of a substantial risk through circumstantial evidence that the risk was obvious." *Lance*, 985 F.3d at 794.

(Doc. 6, p. 10-11.)

### Defendant Laha

The only allegations in the amended complaint directly related to Defendant Laha are that on April 6, 2024—the day of the battery in which Plaintiff sustained the injuries in question here—he personally informed Defendant Laha that "'my finger needed stitches, and that my hand was broken.' However, [Defendant] Laha failed to provide the necessary treatment." (Doc. 7, p. 6-8.) In the memorandum and exhibits filed in support of the amended complaint, Plaintiff further explains that immediately after the battery, at approximately 12:10 p.m., he was escorted to the LCF clinic, where he received no medical treatment. (Doc. 8, p. 2; *see also* Doc. 8-1, p. 7.) Two nurses—one of whom was Defendant Laha—saw Plaintiff at approximately 2:00 p.m. for segregation clearance; they took his vitals and examined his hand, Defendant Laha cleaned the blood off of a laceration on Plaintiff's index finger, and the nurses left. (Doc. 8, p. 2-3; Doc. 8-1, p. 7.)

Later that same day, Defendant Laha came to segregation to pass out medication. (Doc. 8,

p. 3.) Plaintiff yelled to her that his finger needed stitches and his hand was broken. *Id.* at 3-4. Defendant Laha replied, in an annoyed and irritated tone, "'Well, you're moving your hand aren't you.'" *Id.* at 4. Plaintiff yelled back that his hand was swollen, and he called Defendant Laha an offensive term. *Id.* Plaintiff later submitted a Health Service Request Form stating that his finger needed stitches and his hand was broken. *Id.* at 5.

The following day, Defendant Laha saw Plaintiff for sick-call. *Id.* at 6. She told Plaintiff that she did not realize that his hand "was this bad" and that she could not stitch the laceration because it had been 24 hours since the injury occurred and there was a risk of "sewing infection within [Plaintiff's] finger." *Id.* An unidentified nurse—possibly Defendant Laha—did, however, clean and bandage Plaintiff's finger that day, order that his finger be routinely wrapped, prescribe Tylenol, and order x-rays. (Doc. 8-1, p. 8.) Plaintiff was transferred from LCF to EDCF on April 8, 2024 and does not allege he had further contact with Defendant Laha. (Doc. 8, p. 6.) In his memorandum, Plaintiff asserts that on April 6, 2024, Defendant Laha "was clearly aware of the possibility of [his] finger getting infected without the necessary treatment within a 24-hour period, but further failed to provide the necessary treatment, in order to prevent infection." (Doc. 8, p. 19.)

Without further explanation, this assertion is the type of conclusory allegation that is insufficient to state a plausible claim for relief. First, it is not enough to broadly allege that Defendant Laha was aware of a risk of infection but did not act to prevent the infection. Generally speaking, a risk of infection is present with every open wound. But in order to rise to the level of a constitutional violation, Defendant Laha must have "know[n] of and disregard[ed] an *excessive* risk to inmate health or safety." *See Martinez*, 430 F.3d at 1304 (emphasis added). Plaintiff has not alleged "facts from which the inference could be drawn that a *substantial* risk of *serious* harm" from infection existed on April 6, 2024 when he saw Defendant Laha. *See Martinez*, 430 F.3d at

12

1305. Although Plaintiff may rely on circumstantial evidence that the risk was obvious to show Defendant Laha's awareness of a substantial risk, *see Lance*, 985 F.3d at 794, he has not alleged the existence of such evidence.

Plaintiff does not describe the laceration in detail. He does not describe what it looked like at the time he saw Defendant Laha. He does not detail any relevant information he may have told Defendant Laha on April 6, 2024, other than when he yelled to her during medication pass out his belief that he needed stitches in his finger. He does not state whether his wound was still bleeding at that point. He does not explain why the risk of serious infection was obvious.

Second, it is not clear what acts Defendant Laha did or failed to do that Plaintiff believes show unconstitutional deliberate indifference. It is clear that Plaintiff is dissatisfied with the medical treatment he received from Defendant Laha, but a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. See *Estelle*, 429 U.S. at 106–07. The prisoner's right is to medical care, not to the type or scope of medical care he personally desires.

The Tenth Circuit has explained that "deliberate indifference may arise from a failure to treat <u>properly</u>," even when medical treatment has occurred. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1138 (2023). One example of an unconstitutional failure to treat properly is "a doctor who ordered daily infirmary visits and was aware of gangrenous black hand tissue for two weeks, yet only prescribed Tylenol with codeine"; that doctor was held to have "failed to treat the condition properly and delayed referral to a specialist" despite "[t]he patients' medical issue obviously requir[ing] 'additional medical care and referral.'" *Lucas*, 58 F.4th at 1138 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 & n.7 (10th Cir. 2001)). In another example, a plausible claim of deliberate indifference rested on allegations that the doctor treating an inmate's knee

13

injury initially provided pain medication but then "denied further pain relief, told the patient 'to toughen up,' and delayed an MRI." *Lucas*, 58 F.4th at 1138 (citing *Gray v. Geo Grp., Inc.*, 727 F. App'x 940, 945046 (10th Cir. 2018) (unpublished)).

In those cases, although the inmate received some care, there was "the functional equivalent of a complete denial of care in light of the specific circumstances." *Lucas*, 58 F.4th at 1139. Here, however, the treatment that Plaintiff received does not equal a complete denial of care, based on the factual allegations in the amended complaint, memorandum in support, and the attachments thereto. It is unclear what treatment Plaintiff believes he should have received but did not. And on April 7, 2024, Defendant Laha displayed a desire to mitigate the risk of infection by explaining to Plaintiff that she would not stitch his finger due to not wanting to stitch infection into his hand.

At most, Plaintiff's allegations against Defendant Laha might demonstrate negligence. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–106 (footnote omitted).

Even liberally construing the amended complaint and taking all facts therein as true, Plaintiff has not alleged facts that support a plausible claim that Defendant Laha violated Plaintiff's constitutional right to adequate medical care. Because this is the first time that the Court has examined the particulars of this claim, however, the Court will grant Plaintiff time in which to show cause, in writing, why Defendant Laha should not be dismissed from this action.

**Defendant Knipp**

Plaintiff's interactions with Defendant Knipp began after he was transferred to EDCF, after his index finger was diagnosed as infected, and after his hand was diagnosed with multiple fractures. (Doc. 7, p. 8.) On April 15, 2024, the same day that his fractures were diagnosed, Defendant Knipp came to Plaintiff's cell. *Id.* At her request, Plaintiff placed his arm out through the food pass and Defendant Knipp "inadequately placed a splint on [Plaintiff's] hand." *Id.* Plaintiff does not further explain what he means by "inadequately." In his supporting memorandum, Plaintiff states that Defendant Knipp asked him to not remove the splint until she followed up with him three days later. (Doc. 8, p. 7.) Defendant Knipp failed to follow up with Plaintiff on the designated day and Plaintiff removed the splint in response to discomfort and elbow pain. (Doc. 7, p. 8; Doc. 8, p. 7.)

Plaintiff's hand was later placed in a cast by individuals not named as parties in this action; the cast was removed on May 29, 2024. (Doc. 7, p. 8.) Plaintiff's hand was x-rayed again on June 6, 2024, and results available on June 10, 2024 showed that his hand was still broken. *Id.* Defendant Knipp failed to inform Plaintiff of these results until she saw him at an unrelated sick-call on June 19, 2024. *Id.* at 8-9. As Plaintiff points out, the grievance response referred to earlier in this order, Exhibit 5 to Plaintiff's memorandum in support of the amended complaint, reflects the finding that "[t]here was a delay in informing Mr. Adkins of the results of his x-ray." (Doc. 8-5, p. 1.)

In his memorandum in support of the amended complaint, Plaintiff clarifies his argument that Defendant Knipp violated his Eighth Amendment rights when she asked him to put his arm through the food pass and then "inadequately placed a splint on [his] hand." (Doc. 8, p. 20.) Because Plaintiff does not further explain what he means by "inadequately," this is insufficient to support a plausible claim for relief in this matter. *See Hall*, 935 F.2d at 1110 ("[C]onclusory

15

allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."). Similarly, Plaintiff's bald assertion that Defendant Knipp's failure to follow up with him 3 days later as she had said she would violated his Eighth Amendment rights (Doc. 8, p. 20) is not sufficient to state a plausible claim.

Plaintiff asserts that he "had to sit through 3 weeks of agonizing pain before his hand was put in a cast," apparently due to Defendant Knipp's failure to follow up as promised. *Id.* But Plaintiff's own factual allegations undermine this assertion. His supporting memorandum details a different nurse seeing him on April 23, 2024, at which time he was informed that his referral to orthopedic services had been approved that morning. (Doc. 8, p. 8.) On April 25, 2024, Plaintiff refused to be seen for sick-call for his pain because he wanted to see a doctor. *Id.* On May 9, 2024, Plaintiff's hand was put into a cast. *Id.* at 11. None of Plaintiff's allegations, even when taken as true, support the assertion that Defendant Knipp's failure to follow up on April 18, 2024, caused a 3-week delay in Plaintiff's treatment.

Even liberally construing the amended complaint and supporting memorandum and taking all facts therein as true, Plaintiff has not alleged facts that support a plausible claim that Defendant Knipp violated Plaintiff's constitutional right to adequate medical care. Because this is the first time that the Court has examined the particulars of this claim, however, the Court will grant Plaintiff time in which to show cause, in writing, why Defendant Knipp should not be dismissed from this action.

**D.  Centurion**

In its January 14, 2024 M&O, the Court explained:

> Defendant Centurion is subject to dismissal from this matter because Plaintiff has failed to allege the type of facts that support a plausible claim for Centurion's liability. Generally speaking, Plaintiff seeks to hold Centurion liable for the allegedly unconstitutional acts of its employees. But in the Tenth Circuit,

16

> "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior, which is a legal doctrine holding employers liable for the acts of their employees taken within the scope of employment, because "vicarious liability is inapplicable to . . . § 1983 suits." *See Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").
>
> Plaintiff has not identified in the complaint or the attachments thereto a formal policy or a custom by Centurion that warrants the imposition of corporate liability. The only policies mentioned are KDOC Internal Management Policies and Procedures (IMPPs) that Plaintiff alleges Centurion staff violated. This is insufficient to support a plausible claim of corporate liability and therefore, Defendant Centurion is subject to dismissal from this matter.

(Doc. 6, p. 4-5.)

The amended complaint alleges only that Centurion staff failed to provide necessary treatment to Plaintiff and thus "violated [his] right to be free from deliberate indifference for a serious medical need." (Doc. 7, p. 6-7, 10.) In his memorandum in support of the amended complaint, however, Plaintiff argues that "Centurion and its staff[ have] had a widespread policy or custom of deliberate indifference in the Department of Corrections." (Doc. 8, p. 17.) He supports this argument with Exhibits 10 and 11, which are attached to the memorandum, and which are two articles from the publication Prison Legal News that refer to investigations and lawsuits stemming from Centurion's role as medical care contractor in state prisons in Mississippi and Vermont. *Id.*

17

(See also Docs. 8-10 and 8-11.)

The Court will defer the question of whether Plaintiff has sufficiently established that Centurion has created a custom of providing inadequate care to prisoners. At this point, Plaintiff has failed to plead sufficient facts to state a plausible claim that a Centurion employee named as a defendant in this matter violated his Eighth Amendment rights. If Plaintiff's claims against Defendant Laha and/or Defendant Knipp should proceed, the Court will consider whether Plaintiff has pled sufficient facts to support corporate liability. Without a constitutional violation by a Centurion employee, however, the question of corporate liability is moot and Centurion will be dismissed from this matter.

## IV. Conclusion

For the reasons set forth above, the State of Kansas will be dismissed from this matter because the Eleventh Amendment renders it immune from this suit. Defendants Jeff Zmuda, Darcie Holthaus, Tommy L. Williams, Tracy Gunderson, and Sarah D. Madgwick will be dismissed because Plaintiff has failed to allege their direct personal participation in a constitutional violation, meaning he has failed to state a plausible claim against any of them. Thus, the only remaining claims are those brought in Count I against Defendants Laha and Knipp and the claim that Centurion is liable for the constitutional violations of its employees.

As explained above, these claims are subject to dismissal because Plaintiff has failed to state a plausible claim for relief against either Defendant Laha or Defendant Knipp. The Court will grant Plaintiff time in which to show good cause, in writing, why the claims against Defendant Laha, Defendant Knipp, and Centurion should not be dismissed for the reasons stated in this order. If Plaintiff fails to do so or fails to respond to this order, this matter will be dismissed without further prior notice to Plaintiff for failure to state a claim on which relief may be granted.

**IT IS THEREFORE ORDERED** that Defendants the State of Kansas, Zmuda, Holthaus, Williams, Gunderson, and Madgwick are dismissed from this action. Plaintiff is granted to and including **March 10, 2025**, in which to show good cause, in writing, why his claims against Defendant Laha, Defendant Knipp, and Centurion should not be dismissed for the reasons set forth in this order.

**IT IS SO ORDERED.**

DATED:  This 7th day of February, 2025, at Kansas City, Kansas.

                                             S/ John W. Lungstrum
                                             JOHN W. LUNGSTRUM
                                             United States District Judge