IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WESLEY L. ADKINS,

                                       **Plaintiff,**

     v.                                                                     CASE NO. 24-3210-JWL

STATE OF KANSAS, ET AL.,

                                       **Defendants.**

## MEMORANDUM AND ORDER

This matter is a pro se civil rights action brought under 42 U.S.C. § 1983 by Plaintiff and state prisoner Wesley L. Adkins, who is housed at El Dorado Correctional Facility in El Dorado, Kansas. It comes before the Court on Plaintiff's response (Doc. 10) and his amended response (Doc. 11) to the memorandum and order to show cause issued on February 7, 2025. For the reasons explained below, the Court will dismiss Defendant Kell A. Knipp from this matter because Plaintiff has failed to plead a plausible claim against her on which relief can be granted. Plaintiff's claims against Defendant Jennifer Laha and Centurion Managed Care cannot be processed without additional information, which the Court will direct the appropriate officials to provide.

### Background

This matter began on November 21, 2024, with the filing of Plaintiff's initial complaint. (Doc. 1.) Because Plaintiff is a prisoner, the Court was required by statute to screen the complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). After conducting the screening, the Court issued a memorandum and order identifying deficiencies in the complaint and granting Plaintiff time to file an amended

1

complaint that cured the deficiencies. (Doc. 6.)

Plaintiff promptly filed his amended complaint. (Doc. 7.) The Court conducted the required screening of the amended complaint and issued a memorandum and order to show cause (MOSC) dismissing all Defendants except Defendants Laha, Knipp, and Centurion. (Doc. 9.) With respect to Defendants Laha and Knipp, the Court set forth the required elements of a plausible claim that these individuals violated Plaintiff's Eighth Amendment rights by deliberate indifference to Plaintiff's serious medical needs. (Doc. 9, p. 9-10.) The Court deferred the question of whether Plaintiff had pled a plausible claim against Defendant Centurion, explaining that "[i]f Plaintiff's claims against Defendant Laha and/or Defendant Knipp . . . proceed, the Court will consider whether Plaintiff has pled sufficient facts to support corporate liability. Without a constitutional violation by a Centurion employee, however, the question of corporate liability is moot." *Id.* at 18.

The Court then identified the allegations in the amended complaint related to Defendant Laha, *id.* at 11-12, and concluded that they were insufficient to state a plausible claim for relief. The MOSC explained:

> First, it is not enough to broadly allege that Defendant Laha was aware of a risk of infection but did not act to prevent the infection. Generally speaking, a risk of infection is present with every open wound. But in order to rise to the level of a constitutional violation, Defendant Laha must have "know[n] of and disregard[ed] an *excessive* risk to inmate health or safety." *See Martinez*, 430 F.3d at 1304 (emphasis added). Plaintiff has not alleged "facts from which the inference could be drawn that a *substantial* risk of *serious* harm" from infection existed on April 6, 2024 when he saw Defendant Laha. *See Martinez*, 430 F.3d at 1305. Although Plaintiff may rely on circumstantial evidence that the risk was obvious to show Defendant Laha's awareness of a substantial risk, *see Lance*, 985 F.3d at 794, he has not alleged the existence of such evidence.
>
> Plaintiff does not describe the laceration in detail. He does not describe what it looked like at the time he saw Defendant Laha. He does not detail any relevant information he may have told Defendant Laha on April 6, 2024, other than when he yelled to her during medication pass out his belief that he needed stitches in his finger. He does not state whether his wound was still bleeding at that point. He does not explain why the risk of serious infection was obvious.

(Doc. 9, p. 12-13.)

The Court further held that the amended complaint did not make clear the acts or omissions by Defendant Laha that Plaintiff believes show unconstitutional deliberate indifference and it cited the Tenth Circuit's holding that deliberate indifference may arise even when some treatment is provided, if that treatment is "the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* at 13-14 (citing and quoting *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1138 (10th Cir. 2023). After giving examples of this type of deliberate indifference, the Court explained that

> the treatment that Plaintiff received does not equal a complete denial of care, based on the factual allegations in the amended complaint, memorandum in support, and the attachments thereto. It is unclear what treatment Plaintiff believes he should have received but did not. And on April 7, 2024, Defendant Laha displayed a desire to mitigate the risk of infection by explaining to Plaintiff that she would not stitch his finger due to not wanting to stitch infection into his hand.

(Doc. 9, p. 14.)

Moreover, to the extent that Plaintiff's allegations might show negligence by Defendant Laha, "'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Thus, the Court concluded that even liberally construing the amended complaint and taking all facts therein as true, Plaintiff had failed to allege facts that support a plausible claim that Defendant Laha violated Plaintiff's constitutional right to adequate medical care.

Turning to Defendant Knipp, the Court in the MOSC set forth the relevant facts alleged in the amended complaint and explained that Plaintiff's general and conclusory allegation that

3

Defendant Knipp "inadequately placed a splint on [Plaintiff's] hand," without further explanation of how it was inadequate, was insufficient to support a plausible claim for relief. (Doc. 9, p. 15-16.) Similarly, the MOSC noted that Plaintiff did not sufficiently articulate how Defendant Knipp's failure to follow up with him three days after placing the splint and her delay in informing him of x-ray results violated Plaintiff's constitutional rights. *Id.* The Court granted Plaintiff time in which to show cause, in writing, why his claims against Defendants Laha and Knipp should not be dismissed for failure to state a plausible claim on which relief could be granted. *Id.* at 14, 16. Plaintiff has now filed his response (Doc. 10) and an amended response (Doc. 11), both of which this Court has carefully considered and liberally construed.

**Analysis**

With respect to Defendant Laha, the response repeats only the same general, conclusory assertions of "inadequate" care that the MOSC explained are insufficient to state a plausible claim for relief. (Doc. 10, p. 1-2; *see* Doc. 9, p. 12-13.) In the amended response, however, Plaintiff asserts that when Defendant Laha examined his hand on April 6, 2024, she saw that his hand was swollen, the cut on his finger was "bleeding profusely," and the bone in his finger was visible through the laceration. (Doc. 11, p. 2.) He further alleges that Defendant Laha did not stitch the laceration, nor did she provide him with Tylenol, bandages, or antibiotic ointment. *Id.*

Plaintiff further alleges that when he saw Defendant Laha the following day, his finger was still bleeding "profusely," pus and scabbing were visible, and his hand remained swollen. *Id.* After expressing that she did not realize how bad Plaintiff's hand was and explaining why she could not stitch the wound, Defendant Laha cleaned and bandaged Plaintiff's finger, ordered that it be routinely wrapped, prescribed Plaintiff Tylenol, and ordered x-rays. *Id.* at 3. The Court finds that the proper processing of Plaintiff's claim against Defendant Laha cannot be achieved without

4

additional information from the appropriate Kansas Department of Corrections (KDOC) officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Thus, the Court will order the appropriate KDOC officials to prepare and file a *Martinez* report regarding Plaintiff's claim against Defendant Laha.

Turning to Defendant Knipp, Plaintiff's response to the MOSC contains only the same general assertions of "inadequate" care that the Court has already explained do not sufficiently support a plausible claim for relief. (Doc. 10, p. 2-3; *see* Doc. 9, p. 15-16.) In the amended response, Plaintiff further asserts that on April 15, 2024, Defendant Knipp told him that his hand was fractured but "failed to provide the necessary treatment for [Plaintiff's] hand, due to her deliberately violating KDOC's Internal Management Policy and Procedures, by allowing a correctional officer, to be directly responsible in helping her to improperly place a splint on [Plaintiff's] hand." (Doc. 11, p. 3-4.) Plaintiff reminds the Court that Defendant Knipp failed to follow up on Plaintiff 3 days later. *Id.* at 4.

Plaintiff also repeats his assertion that Defendant Knipp violated his Eighth Amendment rights in June 2024 when she failed to immediately inform him that x-rays showed continuing fractures in his hand. *Id.* at 4-5. He acknowledges that Defendant Knipp promptly referred him to see an orthopedic specialist, but he believes Defendant Knipp should have re-splinted his hand at that point or told him of the continuing fractures. *Id.* at 5. Plaintiff emphasizes that he did not see an orthopedist until July 23, 2024, at which point he was told that his hand had improperly healed, his hand was diagnosed as deformed, and surgery was recommended. *Id.* at 6. Plaintiff advises that the deformity caused serious arthritis in his hand and "this injury . . . could have been easily prevented, had [he] received adequate medical treatment from [Defendant] Knipp, on June 10, 2024." *Id.*

5

To the extent that Plaintiff's claim against Defendant Knipp rests on the events in April 2024 when she splinted his hand and failed to follow up 3 days later, he has failed to state a plausible claim for relief. Even liberally construing all of the information in the response and amended response, Plaintiff again makes only conclusory arguments that the splinting was "inadequate" and "improperly place[d]." Despite multiple opportunities to further explain what he means by "inadequate" in this context, Plaintiff has failed to do so. Moreover, as previously explained, the violation of an IMPP does not necessarily show a constitutional violation. (*See* Doc. 9, p. 9 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010).) Thus, Plaintiff's assertion that Defendant Knipp violated an IMPP by allowing a correctional officer to help place the splint, without more, is insufficient to show a constitutional violation. And, as also previously explained, the "bald assertion that Defendant Knipp's failure to follow up with [Plaintiff] 3 days later . . . violated [Plaintiff's] Eighth Amendment rights is not sufficient to state a plausible claim." (Doc. 9, p. 16.)

The Court notes that, although Plaintiff previously appeared to focus his claim against Defendant Knipp on the April 2024 events (*see* Doc. 9, p. 15), he now appears to also allege that Defendant Knipp violated his Eighth Amendment rights when she failed to immediately inform him of the results of his June 2024 x-rays *and* failed to re-splint his hand after learning those results. (*See* Doc. 11, p. 6.) Plaintiff contends that had Defendant Knipp provided "adequate medical treatment" on June 10, 2024, the lasting damage to his hand "could have been easily prevented," but he does not further explain how the delay in informing him of the x-ray results or the failure to re-splint his hand contributed to or in any way affected the lasting damage to his hand. *Id.*

Even taking as true all of the facts alleged by Plaintiff, he has not shown that the delay in

informing him of the x-ray results or the failure to re-splint his hand harmed him or were due to Defendant's deliberate indifference to Plaintiff's serious medical needs. Exhibit 5 to Plaintiff's memorandum in support of the amended complaint contains an "Official-Grievance Response" regarding Plaintiff's grievance that he was not promptly informed of the continuing fractures shown by the June 2024 x-rays. (Doc. 8-5, p. 1.) In relevant part, this documents concludes that although "[t]here was a delay in informing Mr. Adkins of the results of his x-ray[,] . . . there was not delay in referrals or worsening of the fractures related to this delay in the resident getting results." *Id.* In support, the grievance response points to an entry in the electronic medical record on June 10, 2024 "reporting the results of the x-ray and the intention of the provider to submit an orthopedics referral" and the fact that x-rays taken on July 23, 2024, "did not show any change in fractures" from the x-rays taken the previous month. *Id.*

Simply put, there is no indication beyond Plaintiff's conclusory assertions that either the 9-day delay in informing Plaintiff that the June 2024 x-rays showed fractures or Defendant Knipp's failure to re-splint Plaintiff's hand in June 2024 were due to unconstitutional deliberate indifference to his serious medical needs. Accordingly, Defendant Knipp will be dismissed from this matter without prejudice because Plaintiff has failed to state a claim against her on which relief can be granted. Because the claim against Defendant Laha will not be dismissed at this time, the Court again defers screening of the claim against Defendant Centurion.

**IT IS THEREFORE ORDERED BY THE COURT** that:

(1) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report on or before **March 28, 2025.** Upon the filing of that Report, the Court will screen the remaining portion of Plaintiff's amended complaint and will issue further

7

orders. If any part of the amended complaint survives screening, the Court will enter a separate order serving Defendants and setting an answer deadline.

(2) KDOC officials are directed to undertake a review of the subject matter of Count I of the amended complaint as it is brought against Defendant Jennifer Laha:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the claim against Defendant Laha in Count I of the amended complaint; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to the claim against Defendant Laha in Count I of the amended complaint in this matter and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the amended complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the amended complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, counsel for the KDOC, and to the Attorney General for the State of Kansas.

**IT IS FURTHER ORDERED** that Defendant Kelly A. Knipp is dismissed from this matter without prejudice because Plaintiff has failed to state a plausible claim against Defendant Knipp on which relief can be granted.

**IT IS SO ORDERED.**

DATED: This 20th day of February, 2025, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge