IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WESLEY L. ADKINS,

      **Plaintiff,**

      v.                                                                                       CASE NO. 24-3210-JWL

STATE OF KANSAS, et al.,

      **Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Wesley L. Adkins, a state prisoner appearing pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. The remaining Defendants in this matter are Centurion Managed Care (Centurion) and its employee, nurse Jennifer Laha.[1] (*See* Docs. 9 and 12.) On February 20, 2025, the Court issued a memorandum and order (M&O) finding that the proper processing of Plaintiff's claims against Defendants Centurion and Laha could not be achieved without additional information from appropriate officials of the FCSD. (Doc. 12 (citing *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991)). The Court therefore ordered Kansas Department of Corrections (KDOC) officials to prepare and file a *Martinez* Report, stating that "[u]pon the filing of that Report, the Court will screen the remaining portion of Plaintiff's amended complaint and will issue further orders." (Doc. 12, p. 7-8.) The *Martinez* Report (Doc. 13), hereinafter referred to as "the Report," has now been

---

[1] Contrary to the statements in the *Martinez* Report (Doc. 13, p. 2-3), Registered Nurse Jennifer Laha is not "the last Defendant in this case," nor have all additional counts "already been dismissed by the Court." Centurion remains a Defendant and Plaintiff's claim that Centurion is liable for Defendant Laha's acts or failures to act also remains. (*See* Doc. 12, p. 7 ("Because the claim against Defendant Laha will not be dismissed at this time, the Court again defers screening of the claim against Defendant Centurion.").)

1

filed[2], and Plaintiff's amended complaint (Doc. 7) is before the Court for the completion of screening in light of the Report. The Court's screening standards are set forth in detail in the January 14, 2025 M&O. (Doc. 6, p. 2-3.)

## I. Nature of the Matter before the Court

The events underlying the remaining claims in this matter occurred while Plaintiff was incarcerated at Lansing Correctional Facility (LCF). According to the operative amended complaint and the memorandum filed in support of the amended complaint, on April 6, 2024, Plaintiff battered an LCF correctional officer. (Doc. 7, p. 6; Doc. 8, p. 2.) Immediately after the battery, Plaintiff was escorted to the LCF clinic, but did not receive medical treatment. (Doc. 8, p. 2.) He was then taken to segregation and Defendant Laha conducted his segregation clearance; she examined his hand, wiped blood from a laceration on his index finger, and left. *Id.* at 2-3. In a later response to an order from this Court, Plaintiff additionally alleged that during this examination by Defendant Laha, the cut on his finger was "bleeding profusely" and the bone in his finger was visible through the laceration. (Doc. 11, p. 2.)

Over the course of the day, Plaintiff told multiple LCF corrections officers during that day that he needed medical attention for his hand and ankle and he submitted a health services request form stating that his hand was broken and his finger needed stitches. (Doc. 8, p. 4-5.) That evening, when Defendant Laha returned to segregation to pass out medication, Plaintiff yelled to her that his finger needed stitches and his hand was broken. *Id.* at 3-4. Defendant Laha replied, "'Well, you're moving your hand aren't you.'" *Id.* at 4. Plaintiff called Defendant Laha a "punk-rock bitch" and yelled that his hand was swollen. *Id.*

---

[2] The KDOC requests to be terminated from this action now that it has filed the Report. (Doc. 13, p. 7.) The request will be granted.

The following morning, Defendant Laha saw Plaintiff during sick call. *Id* at 6. Plaintiff asserts that while examining him, Defendant Laha stated, "'I did not realize that your hand was this bad.'" *Id.* She explained that she could not stitch the wound on his finger because it had been more than 24 hours and there was risk of "sewing infection within [Plaintiff's] finger." *Id.* Plaintiff further alleges that during this examination, his finger was bleeding "profusely," his hand was swollen, and pus and scabbing were visible. (Doc. 11, p. 2.) On April 8, 2024, two days after he was injured, Plaintiff was transferred to El Dorado Correctional Facility (EDCF), where he remains housed today. (Doc. 8, p. 6.)

Plaintiff asserts that the day after he was transferred to EDCF, his finger was diagnosed as infected. *Id.* His hand was x-rayed later in April 2024 and the x-rays revealed fractures; Plaintiff's hand was placed into a splint and then a case. *Id.* at 7, 11. Plaintiff further alleges that an orthopedist he saw in May 2024 "confirmed that 'due to the infection that [Plaintiff] had sustained in [his] finger, the swelling and stiff achy joint pain[] will more than likely be a life-long problem.'" *Id.* at 11. Follow-up x-rays in June 2024 revealed his hand was still fractured and, on July 23, 2024, an orthopedic provider "confirmed 'that [Plaintiff's] hand had improperly healed and that[] it was deformed and needed surgery[] in order to properly be fixed.'" *Id.* at 11-12, 14. Plaintiff alleges that the infection in his finger "caused serious nerve damage and pain" and has required physical therapy. *Id.* at 19.

In the portion of Count I that has survived the screening process thus far, Plaintiff alleges that Defendant Laha violated his Eighth Amendment rights by failing to provide necessary treatment out of deliberate indifference to his serious medical needs. (Doc. 7, p. 7-8.) More specifically, Plaintiff alleges that Defendant Laha was "clearly aware of the possibility of [Plaintiff's] finger getting infected without the necessary treatment within a 24-hour period, but

3

further failed to provide the necessary treatment in order to prevent infection."[3] *Id.* at 19. Liberally construed, Count II alleges that Defendant Centurion is liable for its employee Defendant Laha's acts and failures to act because it manages the healthcare services at LCF. (Doc. 7, p. 7, 10; Doc. 8, p. 30-31.) As relief in this matter, Plaintiff seeks $10,000,000.00 in compensatory damages. (Doc. 7, p. 14.)

## II. The *Martinez* Report (Doc. 13)

The Report acknowledges that Defendant Laha and another nurse provided initial treatment after Plaintiff battered a correctional officer. (Doc. 13, p. 4.) According to the affidavit from Defendant Laha submitted with the Report, she noted a cut on the knuckles of Plaintiff's right index and middle fingers, measuring less than 5 mm in length, that "was not a gaping wound and did not require stitches." (Doc. 13-3, p. 2-3.) Plaintiff "was able to move his hands and fingers with no difficulty" and "exhibited no signs of stress or discomfort." *Id.*

Plaintiff's medical records, submitted under seal as an exhibit to the Report, reflect that Plaintiff advised Defendant Laha at this time that his hand was broken and it hurt, although he was "able to move right hand and fingers with no difficulties." (Doc. 15, p. 2.) In any event, Defendant Laha and another nurse cleaned the laceration with saline and left it open to air. (Doc. 13-3, p. 3.) Defendant Laha does not recall any other interactions with Plaintiff on April 6, 2024. *Id.*

The Report further acknowledges that Defendant Laha saw Plaintiff during sick call the following day and Plaintiff at that time stated, in relevant part, that his hand was broken and his cut needed stitches. *Id.* at 3. Defendant Laha examined Plaintiff's hand and saw that it was swollen,

---

[3] Plaintiff also alleges that Defendant Laha's actions and failures to act violated KDOC internal management policy and procedures (IMPPs). *Id.* at 20. As the Court has previously explained to Plaintiff, "[t]he violation of a prison regulation does not state a constitutional violation unless the prison official's conduct 'failed to conform to the constitutional standard.' *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted)." (Doc. 9, p. 9; *see also* Doc. 12, p. 6.) Thus, these allegations are not discussed further in this order.

"a creamy white substance was found inside the wound, and [Plaintiff] was unable to bend his right index finger or squeeze his right hand." *Id.* Plaintiff's medical records reflect Defendant Laha's additional notes that the top of Plaintiff's right hand was tender to the touch and that a 0.4 cm laceration on his right index finger knuckle was "bleeding . . . and creamy white on the inside" but no bruising was noted. (Doc. 15, p. 5-6.)

Defendant Laha cleaned the wound with saline, applied an antibiotic cream or ointment, and dressed the wound with gauze and a cohesive bandage. (Doc. 13-3, p. 3.) Assessing the situation as "urgent," she then called the medical provider, who ordered x-rays to be taken the following day, but Plaintiff was transferred to EDCF before the x-rays could be taken. (Doc. 13-3, p. 3; Doc. 15, p. 6.) Plaintiff's medical records reflect that upon his arrival at EDCF, medical staff started Plaintiff on an antibiotic and ordered x-rays. (Doc. 15, p. 9-10, 15.) They further reflect that Plaintiff's x-rays revealed multiple fractures in his hand, that an orthopedic doctor recommended surgical repair of the fractures and ordered physical therapy, and that Plaintiff reported ongoing pain and had limited range of motion. *See, e.g., id.* at 18, 41.

**III. Discussion**

    **A. Deliberate Indifference to Serious Medical Needs**

As the Court has previously set out:

> An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). . . .
>
>> The test for . . . deliberate indifference to a serious medical need in this context involves two components, one objective and one subjective. *Paugh v. Uintah County*, 47 F.4th 1139, 1154 (10th Cir. 2022), *cert. denied* June 26, 2023.
>>
>>> The objective component focuses on the "seriousness of the plaintiff's alleged harm," and the subjective component focuses on

>> 'the mental state of the defendant with respect to the risk of that harm."
> ….
> To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self* [*v. Crum*], 439 F.3d [1227,] 1230 [(10th Cir. 2006)] (quoting *Farmer* [*v. Brennan*], 511 U.S. [825,] 834 [(1994)]). Generally, a medical need qualifies as "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock* [*v. Colo.*], 218 F.3d [1205,] 1209 [(10th Cir. 2000)] (citation omitted).
>
> *Paugh*, 47 F.4th at 1154-55. . . .
>
>> "The subjective component of the test for deliberate indifference to a serious medical need is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Martinez*, 430 F.3d at 1305. "A [p]laintiff may prove awareness of a substantial risk through circumstantial evidence that the risk was obvious." *Lance*, 985 F.3d at 794.

(Doc. 9, p. 10-11 (quoting Doc. 6, p. 10-11).)

The Court has carefully reviewed the Report and the attachments thereto. The *Martinez* Report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). It "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n.3 (10th Cir. 1983)). Thus, at this point in the proceedings, the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 922 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

As noted above, Plaintiff asserts that Defendant Laha "was clearly aware of the possibility of [his] finger getting infected without the necessary treatment within a 24-hour period, but further failed to provide the necessary treatment[] in order to prevent infection." (Doc. 8, p. 19.) Despite the additional information later provided by Plaintiff and in the Report and exhibits thereto, the Court concludes that Plaintiff has not alleged sufficient specific facts to establish that Defendant Laha was aware of and disregarded an excessive risk of serious infection to Plaintiff's finger. In short, the Court is unconvinced that a 4-5 mm cut on Plaintiff's knuckle, even one through which bone is visible, presents an excessive risk of serious infection such that the failure to provide Tylenol, bandages, or antibiotic ointment implies deliberate indifference to a serious medical need. In other words, Plaintiff has not alleged facts that, if true, show that on April 6, 2024, Defendant Laha was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff from infection existed and that she in fact drew that inference. *See Martinez*, 430 F.3d at 1305.

Moreover, when Defendant Laha saw Plaintiff again less than 24 hours later, she applied antibiotic ointment to Plaintiff's finger, wrapped it, provided Tylenol, and ensured that x-rays of his hand were ordered. Regarding their initial interaction, Plaintiff has—at best—alleged facts that, if true, could support a claim of medical negligence. "[N]egligence and gross negligence do not give rise to section 1983 liability." *Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992). In other words, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06 (footnote omitted). As Plaintiff is aware, since he received at least some treatment from Defendant Laha, he must show that the treatment he

7

received was, under the specific circumstances of Plaintiff's injury, the functional equivalent of a complete denial of care. (*See* Doc. 9, p. 13-14 (citing and quoting *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1138 (10th Cir. 2023)). He has not done so.

Even liberally construing the amended complaint (Doc. 7), the memorandum in support of the amended complaint (Doc. 8), Plaintiff's response to this Court's prior memorandum and order to show cause (Doc. 10), and his amended response (Doc. 11) in light of the information provided in the Report (Doc. 13), the Court concludes that Plaintiff has not stated a plausible claim for relief against Defendant Laha. Thus, the claim against Defendant Laha is subject to dismissal. Defendant Centurion's alleged liability in this action is premised on an asserted custom or policy of deliberate indifference that led to Defendant Laha violating Plaintiff's Eighth Amendment rights. Since Plaintiff has not stated a plausible claim that Defendant Laha violated his constitutional rights, however, Defendant Centurion is also subject to dismissal from this action. The Court will, however, grant Plaintiff the opportunity to respond to the Report and to show good cause why this matter should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted to and including **May 9, 2025**, in which to respond to the *Martinez* Report and to show cause, in writing, why this matter should not be dismissed for the reasons explained in this order. The Clerk is directed to terminate the KDOC's status as an interested party in this action.

**IT IS SO ORDERED.**

Dated April 8, 2025, in Kansas City, Kansas.

                                            **s/ John W. Lungstrum**
                                            **JOHN W. LUNGSTRUM**
                                            **UNITED STATES DISTRICT JUDGE**