IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**WESLEY L. ADKINS,**

      **Plaintiff,**

      v.                                                           CASE NO. 24-3210-JWL

**STATE OF KANSAS, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner Wesley L. Adkins brought this pro se civil rights action under 42 U.S.C. § 1983 claiming the violation of his constitutional rights during his confinement at Lansing Correctional Facility (LCF) and El Dorado Correctional Facility (EDCF). In orders dated February 7, 2025 (Doc. 9) and February 20, 2025 (Doc. 12), the Court dismissed all of the named Defendants in this matter except Centurion Managed Care (Centurion), which provides medical health care at both LCF and EDCF, and nurse Jennifer Laha, who works for Centurion at LCF. For the reasons set forth in this order, this matter will be dismissed because Plaintiff has failed to state a plausible claim for relief against either remaining Defendant.

**I. Background**

The events underlying Plaintiff's claims occurred while Plaintiff was incarcerated at LCF and EDCF. Because the only claims remaining at this time are those brought against Defendants Centurion and Laha, the Court confines the recitation of facts[1] in this order to those relevant to these Defendants.

---

[1] The facts set forth here are taken from the operative amended complaint and the memorandum filed in support of the amended complaint. The Court liberally construes a pro se pleading and applies "less stringent standards than [it applies to] formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, during this initial screening phase of a case, the Court accepts all well-pleaded allegations in the amended complaint as true. *See*

1

On April 6, 2024, Plaintiff battered an LCF correctional officer. (Doc. 7, p. 6; Doc. 8, p. 2.) After the battery, Plaintiff was escorted to the LCF clinic, but did not receive medical treatment. (Doc. 8, p. 2.) He was then taken to segregation and Defendant Laha conducted his segregation clearance; she examined his hand, wiped blood from a laceration on his index finger, and left. *Id.* at 2-3. In a later response to an order from this Court, Plaintiff additionally alleged that during this examination by Defendant Laha, the cut on his finger was "bleeding profusely" and the bone in his finger was visible through the laceration. (Doc. 11, p. 2.)

Over the rest of the day, Plaintiff told multiple LCF corrections officers that he needed medical attention for his hand and he submitted a health services request form stating that his hand was broken and his finger needed stitches. (Doc. 8, p. 4-5.) That evening, when Defendant Laha returned to segregation to pass out medication, Plaintiff yelled to her that his finger needed stitches and his hand was broken. *Id.* at 3-4. Defendant Laha replied, "'Well, you're moving your hand aren't you.'" *Id.* at 4. Plaintiff called Defendant Laha a "punk-rock bitch" and yelled that his hand was swollen. *Id.*

The following morning, Defendant Laha saw Plaintiff during sick call. *Id* at 6. Plaintiff asserts that while examining him, Defendant Laha stated, "'I did not realize that your hand was this bad.'" *Id.* She explained that she could not stitch the wound on his finger because it had been more than 24 hours and there was a risk of "sewing infection within [Plaintiff's] finger." *Id.* Plaintiff further alleges that during this examination, his finger was bleeding "profusely," his hand was swollen, and pus and scabbing were visible. (Doc. 11, p. 2.) On April 8, 2024, two days after he was injured, Plaintiff was transferred to EDCF, where he remains housed today. (Doc. 8, p. 6.)

---

*Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).

The day after Plaintiff transferred to EDCF, his finger was diagnosed as infected. *Id.* His hand was x-rayed later in April 2024 and the x-rays revealed fractures; Plaintiff's hand was placed into a splint and then a cast. *Id.* at 7, 11. Plaintiff further alleges that an orthopedist he saw in May 2024 "confirmed that 'due to the infection that [Plaintiff] had sustained in [his] finger, the swelling and stiff achy joint pain[] will more than likely be a life-long problem.'" *Id.* at 11. Follow-up x-rays in June 2024 revealed his hand was still fractured and, on July 23, 2024, an orthopedic provider "confirmed 'that [Plaintiff's] hand had improperly healed and that[] it was deformed and needed surgery[] in order to properly be fixed.'" *Id.* at 11-12, 14. Plaintiff alleges that the infection in his finger "caused serious nerve damage and pain" and has required physical therapy. *Id.* at 19.

The operative amended complaint and memorandum in support were filed in this matter on January 31, 2025. (Docs. 7 and 8.) The Court was required by statute to screen his amended complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b) and 28 U.S.C. § 1915(e)(2)(B). As noted above, conducting this screening led to the Court to dismiss all of the named Defendants in this matter except Centurion and Laha. (*See* Docs. 9 and 12.)

On February 20, 2025, the Court issued a memorandum and order (M&O) that found that the proper processing of Plaintiff's remaining claims could not be achieved without additional information from Kansas Department of Corrections (KDOC) officials. The Court therefore ordered KDOC officials to prepare and file a *Martinez* Report, after which it would continue screening Plaintiff's claims in this matter. *Id* The *Martinez* Report ("the Report") was filed on March 28, 2025. (Doc. 13.)

3

The Report acknowledges that Defendant Laha and another nurse initially treated Plaintiff after he battered a correctional officer. (Doc. 13, p. 4.) According to the affidavit from Defendant Laha submitted with the Report, she noted a cut on the knuckles of Plaintiff's right index and middle fingers, measuring less than 5 mm in length, that "was not a gaping wound and did not require stitches." (Doc. 13-3, p. 2-3.) Plaintiff "was able to move his hands and fingers with no difficulty" and "exhibited no signs of stress or discomfort." *Id.*

Plaintiff's medical records, submitted under seal as an exhibit to the Report, reflect that Plaintiff advised Defendant Laha at this time that his hand was broken and it hurt, although he was "able to move right hand and fingers with no difficulties." (Doc. 15, p. 2.) In any event, Defendant Laha and another nurse cleaned the laceration with saline and left it open to air. (Doc. 13-3, p. 3.) Defendant Laha does not recall any other interactions with Plaintiff on April 6, 2024. *Id.*

The Report further acknowledges that Defendant Laha saw Plaintiff during sick call the following day and Plaintiff at that time stated, in relevant part, that his hand was broken and his cut needed stitches. *Id.* at 3. Defendant Laha examined Plaintiff's hand and saw that it was swollen, "a creamy white substance was found inside the wound, and [Plaintiff] was unable to bend his right index finger or squeeze his right hand." *Id.* Defendant Laha also noted that the top of Plaintiff's right hand was tender to the touch and that a 0.4 cm laceration on his right index finger knuckle was "bleeding . . . and creamy white on the inside." (Doc. 15, p. 5-6.)

Defendant Laha cleaned the wound with saline, applied an antibiotic cream or ointment, and dressed the wound with gauze and a cohesive bandage. (Doc. 13-3, p. 3.) Assessing the situation as "urgent," she then called the medical provider, who ordered x-rays to be taken the following day, but Plaintiff was transferred to EDCF before that could happen. (Doc. 13-3, p. 3; Doc. 15, p. 6.) Plaintiff's medical records reflect that upon his arrival at EDCF, medical staff

4

started Plaintiff on an antibiotic and ordered x-rays. (Doc. 15, p. 9-10, 15.) They further reflect that Plaintiff's x-rays revealed multiple fractures in his hand, that an orthopedic doctor recommended surgical repair of the fractures and ordered physical therapy, and that Plaintiff reported ongoing pain and had limited range of motion. *See, e.g., id.* at 18, 41.

The Court resumed the statutorily required screening and concluded that in light of the information in the *Martinez* Report, the remaining claims in the operative complaint are subject to dismissal. Thus, on April 8, 2025, the Court issued a memorandum and order to show cause (MOSC) explaining that the operative amended complaint fails to state a plausible claim against Defendant Centurion or Defendant Laha on which relief can be granted (Doc. 17, p. 5-8.) The Court gave Plaintiff time in which to respond to the Report and to show good cause why the case should not be dismissed in its entirety. *Id.* at 8. Plaintiff timely filed his response to the MOSC on April 24, 2025. (Doc. 18.)

## II. The MOSC (Doc. 17) and Plaintiff's Response (Doc. 18)

As Plaintiff is aware:

> An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). . . .
>
> The test for . . . deliberate indifference to a serious medical need in this context involves two components, one objective and one subjective. *Paugh v. Uintah County*, 47 F.4th 1139, 1154 (10th Cir. 2022), *cert. denied* June 26, 2023.
>
>> The objective component focuses on the "seriousness of the plaintiff's alleged harm," and the subjective component focuses on 'the mental state of the defendant with respect to the risk of that harm."
>> ….
>> To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self* [*v. Crum*], 439 F.3d [1227,] 1230 [(10th Cir. 2006)] (quoting *Farmer* [*v. Brennan*], 511 U.S. [825,] 834 [(1994)]).

> Generally, a medical need qualifies as "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock* [*v. Colo.*], 218 F.3d [1205,] 1209 [(10th Cir. 2000)] (citation omitted).

*Paugh*, 47 F.4th at 1154-55. . . .

> "The subjective component of the test for deliberate indifference to a serious medical need is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Martinez*, 430 F.3d at 1305. "A [p]laintiff may prove awareness of a substantial risk through circumstantial evidence that the risk was obvious." *Lance* [*v. Morris*], 985 F.3d [787,] 794 [(10th Cir. 2021)].

(Doc. 17, p. 5-6; *see also* Doc. 9, p. 10-11 and Doc. 6, p. 10-11.)

After explaining the role a *Martinez* Report plays in the statutorily required screening of a prisoner's civil rights complaint, the MOSC stated:

> Plaintiff asserts that Defendant Laha "was clearly aware of the possibility of [his] finger getting infected without the necessary treatment within a 24-hour period, but further failed to provide the necessary treatment[] in order to prevent infection." (Doc. 8, p. 19.) Despite the additional information later provided by Plaintiff and in the Report and exhibits thereto, the Court concludes that Plaintiff has not alleged sufficient specific facts to establish that Defendant Laha was aware of and disregarded an excessive risk of serious infection to Plaintiff's finger. In short, the Court is unconvinced that a 4-5 mm cut on Plaintiff's knuckle, even one through which bone is visible, presents an excessive risk of serious infection such that the failure to provide Tylenol, bandages, or antibiotic ointment implies deliberate indifference to a serious medical need. In other words, Plaintiff has not alleged facts that, if true, show that on April 6, 2024, Defendant Laha was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff from infection existed and that she in fact drew that inference. *See Martinez*, 430 F.3d at 1305.
>
> Moreover, when Defendant Laha saw Plaintiff again less than 24 hours later, she applied antibiotic ointment to Plaintiff's finger, wrapped it, provided Tylenol, and ensured that x-rays of his hand were ordered. Regarding their initial interaction, Plaintiff has—at best—alleged facts that, if true, could support a claim of medical negligence. "[N]egligence and gross negligence do not give rise to

6

> section 1983 liability." *Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992). In other words, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06 (footnote omitted). As Plaintiff is aware, since he received at least some treatment from Defendant Laha, he must show that the treatment he received was, under the specific circumstances of Plaintiff's injury, the functional equivalent of a complete denial of care. (*See* Doc. 9, p. 13-14 (citing and quoting *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1138 (10th Cir. 2023)). He has not done so.
>
> Even liberally construing the amended complaint (Doc. 7), the memorandum in support of the amended complaint (Doc. 8), Plaintiff's response to this Court's prior memorandum and order to show cause (Doc. 10), and his amended response (Doc. 11) in light of the information provided in the Report (Doc. 13), the Court concludes that Plaintiff has not stated a plausible claim for relief against Defendant Laha. Thus, the claim against Defendant Laha is subject to dismissal. Defendant Centurion's alleged liability in this action is premised on an asserted custom or policy of deliberate indifference that led to Defendant Laha violating Plaintiff's Eighth Amendment rights. Since Plaintiff has not stated a plausible claim that Defendant Laha violated his constitutional rights, however, Defendant Centurion is also subject to dismissal from this action.

(Doc. 17, p. 6-8.)

In his response to the MOSC, Plaintiff asserts that he has stated a plausible Eighth Amendment claim against Defendants Laha and Centurion. (Doc. 18, p. 1-2.) He first states that during the battery on April 6, 2024, he "came into close contact with [the corrections officer's] bodily fluids, which are very hazardous." *Id.* at 2. He asserts that when Defendant Laha examined his finger on April 6, 2024, she was aware that he had been in contact with another individual's bodily fluids, yet she cleaned the laceration with saline—not alcohol or peroxide—and failed to apply antibiotic ointment or bandages, leaving the wound exposed to the air "and more vulnerable to infection." *Id.* at 2-3.

Plaintiff further alleges that his hand was "completely swollen" at that time and that within minutes of Defendant Laha treating his cut, it "continued to bleed profusely." *Id.* at 3. He reminds the Court that throughout the day, he informed multiple LCF staff members of needing medical

7

attention the issue, who confirmed to Plaintiff that they had passed the information on to Defendant Laha and other health care staff. *Id.* at 3-4. Yet Plaintiff received no further treatment that day. *Id.* Plaintiff also reiterates that when he saw Defendant Laha the following day for sick call, his hand "was completely swollen, and pus[] and blood was oozing out from the laceration on [his] finger." *Id.* at 5. Yet Defendant Laha did not prescribe Plaintiff an antibiotic, despite this "significant sign of infection within [Plaintiff's] finger." *Id.* Moreover, on April 9, 2024, Plaintiff was seen by a registered nurse at EDCF who diagnosed his finger as being infected and prescribed antibiotics for Plaintiff. *Id.*

After setting forth the elements of a claim of deliberate indifference to a serious medical need, *id.* at 6-7, Plaintiff states:

> Jennifer Laha is a Registered Nurse, who has been trained to care for injuries.
>
> However, after being alerted that "my finger, and hand needed further medical attention, on April 6, 2024, Jennifer Laha, deliberately disregarded providing adequate medical care for the laceration on my finger, which ultimately presented an excessive risk of serious infection within my finger".
>
> Furthermore, LCF-officials, incorporated in this Response, will testify to the incidents, and statements herein.
>
> Moreover, I literally had to complete (6)-session of physical therapy, partly, due to the excessive infection that I sustained within my finger.

*Id.* at 8 (all errors in original). Plaintiff asks the Court to find that the "defendants Martinez Report, has failed to overcome an Eighth Amendment violation [*sic*]." *Id.* at 1-2.

## III. Analysis

First, the Court clarifies that the Report was not filed by a Defendant in this matter. It was filed at the Court's request by the KDOC, which had been previously dismissed as a Defendant because "the State of Kansas and its agencies are absolutely immune from suits for money damages

8

under the Eleventh Amendment." (*See* Doc. 6, p. 3 (explaining KDOC is subject to dismissal due to Eleventh Amendment immunity); Doc. 9, p. 3-8 (rejecting Plaintiff's argument that this Court waived that immunity on behalf of the State of Kansas and dismissing the KDOC as a Defendant); Doc. 12, p. 9 (directing the clerk to "enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report.").) Second, the Report is not a vehicle by which defendants may "overcome" the allegations in a complaint. As previously explained to Plaintiff, the Court does not use the information in the Report to resolve factual disputes. Rather, the Report is a tool used by the Court "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." (*See* Doc. 17, p. 6 (quoting *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987)).)

The Court has carefully considered Plaintiff's arguments. Plaintiff argues that Defendant Laha was unconstitutionally and deliberately indifferent to his serious medical needs on April 7, 2024 because she did not prescribe antibiotics during the second examination of Plaintiff's hand. (*See* Doc. 18, p. 5.) But the operative amended complaint in this matter identifies Defendant Laha's actions and inaction on *April 6, 2024* as the basis for the claim against her. (Doc. 7, p. 7.) Similarly, in the memorandum in support of the amended complaint Plaintiff does not argue that Defendant Laha's failure to prescribe antibiotics on April 7, 2024 violated the Eighth Amendment. (Doc. 8, p. 6, 18-22.) In fact, Plaintiff expressly states in the memorandum that "[o]n April 6, 2024, nurse, Jennifer Laha, violated my Eighth Amendment [rights] . . . when she failed to provide the necessary treatment, for my index-finger, along with the fractured bones within my hand. [*sic*]" *Id.* at 19.

Based on these allegations, the Court held in its February 7, 2025 order that "Plaintiff has not alleged 'facts from which the inference could be drawn that a *substantial* risk of *serious* harm' from infection existed on April 6, 2024 when he saw Defendant Laha." (Doc. 9, p. 12.) In his initial

9

response to that order, Plaintiff again focused only on April 6, 2024 when discussing his claim against Defendant Laha. (Doc. 10, p. 2.) Plaintiff's amended response elaborated on the state of his injury when he saw Defendant Laha on April 7, 2024, but did not allege that Defendant Laha's acts or inaction on April 7, 2024 violated the Eighth Amendment. (Doc. 11, p. 2-3.) Similarly, the MOSC issued by the Court after it received the *Martinez* Report addressed Plaintiff's claim against Defendant Laha for her actions on April 6, 2024. (Doc. 17, p. 3-4, 7.)

Plaintiff now appears to attempt to enlarge his claim against Defendant Laha to include her failure to obtain oral antibiotics for him on April 7, 2024. (Doc. 18, p. 5.) He also now for the first time alleges that Defendant Laha's actions on April 6, 2024 were unconstitutional because she knew that Plaintiff sustained the cut in a context where he was exposed to the bodily fluids of another individual, which he asserts "are very hazardous." *Id.* at 2.

The Court conducts the statutorily required screening based on the allegations contained within the operative complaint. Plaintiff may not materially amend the claims and the facts alleged in support thereof via his response to the MOSC. To allow such implied amendment would effectively render the screening process never-ending, as the Court would constantly need to re-screen claims based on allegations made not in the controlling pleading, but in other filings. Additionally, allowing such implied amendments—as opposed to an express amendment in the form of a complete and proper standalone new pleading—would also raise Rule 8 concerns, as the claim could morph beyond what is stated in the operative complaint. *See* Federal Rule of Civil Procedure 8 (requiring "a short and plain statement of the claim"); *see also Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1998) (The purpose of Rule 8 "is 'to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow

it to conclude, if the allegations are proved, that the claimant has a legal right to relief.'" (citation omitted)).

After carefully considering the factual allegations in the amended complaint and the memorandum filed in support thereof, as well as the arguments in Plaintiff's response to the MOSC, the Court maintains its prior conclusion that the claim against Defendant Laha must be dismissed.

A viable Eighth Amendment claim may arise when a prison medical practitioner (1) "'fails to treat a medical condition so obvious that even a layman would recognize the condition,' [(2)] 'completely denies care although presented with recognizable symptoms which potentially create a medical emergency,' or [(3)] 'responds to an obvious risk with treatment that is patently unreasonable.'" *See Paugh*, 47 F.4th at 1154 (citation omitted). As the Court has previously explained to Plaintiff, however, cases finding a plausible claim of deliberate indifference to serious medical need are distinguishable from this matter. (*See* Doc. 9, p. 13-14 (citing *Lucas*, 58 F.4th at 1138).)

One example cited was "a doctor who ordered daily infirmary visits and was aware of gangrenous black hand tissue for two weeks, yet only prescribed Tylenol with codeine." *Id.* at 13 (citations omitted). Another involved a doctor who initially provided pain medication for a knee injury but later "denied further pain relief, told the patient 'to toughen up,' and delayed an MRI." *Id.* at 13-14 (citations omitted). Although the failure to mitigate risk of infection in a laceration may rise to the level of a constitutional violation, the facts in such cases are materially distinguishable from those alleged in this case. One example is *Griffin v. Kern Medical Center*, 2011 WL 4344133 (E.D. Cal. Sept. 14, 2011) (unpublished).

Robert Griffin was a pretrial detainee who slipped, hit his head on a steel table, and sustained "a deep cut" above his left eye. *Id.* at *1. Mr. Griffin was taken to a medical center, where the defendant doctor closed his wound with 21 stitches but, because a jail official began "intimidating and hurrying the doctor," the doctor did not bandage the wound or prescribe antibiotics for Mr. Griffin. *Id.* at *3-4. Mr. Griffin developed an infection that resulted in blindness in his left eye. *Id.* The United States District Court for the Eastern District of California found that Mr. Griffin had alleged sufficient facts to state a plausible claim against the doctor for deliberate indifference based on the failure to prescribe antibiotics, noting specifically that "[t]he severity of the cut suggests that the risk of infection was obvious." *Id.* at *4.

In contrast, on April 6, 2024, Plaintiff suffered a 4-to-5-millimeter cut to his knuckles while committing battery. He was promptly seen by Defendant Laha, who examined the cut and flushed it with saline, but who did not bandage the cut or take other steps to proactively prevent infection. Defendant Laha did not provide further treatment to Plaintiff that day, despite his yelling at her later that day during medication pass-out and his submitting a health services request form. Upon reassessing the cut the following morning, however, she altered her course of treatment. Simply put, there is no indication, even liberally construing all of Plaintiff's alleged facts in the amended complaint and taking them as true, that Defendant Laha acted on April 6, 2024 with the deliberate indifference required to state a plausible claim for relief under § 1983. Thus, the claim against Defendant Laha must be dismissed.

Plaintiff's claim against Defendant Centurion is based on alleged policies that led or encouraged Defendant Laha to violate Plaintiff's constitutional rights. Because Plaintiff has not pled a plausible claim that Defendant Laha violated his constitutional rights, his claim against Defendant Centurion must be dismissed as well.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is dismissed without prejudice for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED**.

**Dated May 2, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**